IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

PATRICIA ROMANS,

    Plaintiff,

v.

WAYNE COUNTY COMMISSION,
WAYNE COUNTY SHERIFF, RICHARD
THOMPSON, individually and in his official
capacity,

    Defendants.

Civil Action No. 3:20-cv-00797
**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Patricia Romans, a citizen of the United States and resident of the State of West Virginia, brings this civil action under the Family and Medical Leave Act of 1993 (FMLA), 29 USC §2601 *et seq.*, the West Virginia Human Rights Act, W. Va. Code §5-11-1, *et seq.*, and the common law of West Virginia. The Defendants, Wayne County Commission and Sheriff Richard Thompson, terminated Ms. Romans immediately upon expiration of her FMLA leave for chronic obstructive lung disease ("COPD"). Ms. Romans received approval for FMLA to protect her from contracting COVID-19. This is only because the Defendants refused to enforce mask wearing to prevent the spread of COVID-19, which is expected to kill more Americans by March 2021 than those who perished in World War II[1]. Despite Ms. Romans having requested enforcement of the mandatory mask-wearing policy, the Defendants refused to implement it. The Defendants then terminated Ms. Romans after she had raised concerns about returning to work under conditions

---

[1] The Institute for Health Metrics and Evaluation [IHME], an independent population health research center at the University of Washington, provides a conservative estimate that American deaths from the existing COVID-19 pandemic will exceed the 405,000 death toll of American World War II fatalities by March 2021. https://covid19.healthdata.org/united-states-of-america?view=daily-deaths&tab=trend, (Last Accessed December 10, 2020). By April 2021, the IHME currently projects 538,893 COVID-19 deaths. Id.

that would risk her health and safety. Ms. Romans seeks compensatory and punitive damages (as allowed under law) against the Defendants.

## PARTIES

1. Plaintiff, Patricia Romans is a citizen and resident of Wayne County, West Virginia.

2. Defendant Wayne County Commission is a West Virginia corporation created by statute, West Virginia Code § 7-1-1, that provides for the operation of the Wayne County Sheriff's Office pursuant to West Virginia Code § 7-1-3.

3. Defendant Wayne County Commission is and was, at the time of the actions giving rise to this matter, the employer of Sheriff Richard Thompson.

4. Defendant, Richard Thompson, is a citizen and resident of Wayne County, West Virginia, and is and was the Sheriff of Wayne County at all times mentioned, and the supervisor of Ms. Romans and all other employees in the Sheriff's office.

5. At all times alleged, Defendant Wayne County Commission acted by and through its agents, employees, supervisors, directors, members, officers and assigns and within the full scope of agency, office, employment, and/or assignment.

6. At all times alleged, Defendant Wayne County Commission was a covered "employer" within the meaning of the FMLA.

7. Unless otherwise stated, all acts of the Defendants alleged herein were done by the Defendants under the color of law and in accordance with the statutes, regulations, customs and usages of their offices.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this civil action under 28 U.S.C. §1331.

9. Venue is appropriate in this case under 28 U.S.C. §1391(b) because Defendants are residents

of the state of West Virginia under 28 U.S.C. §1391(c)(2) and a substantial part of the events giving rise to this claim occurred in Wayne County, which is in the Southern District of West Virginia.

## FACTS

10. On January 15, 2019, Defendant Wayne County Commission hired Ms. Romans as a clerk.

11. Ms. Romans' job required her to process tax payments and perform other clerical duties.

12. On March 12, 2020, Defendant Richard Thompson gave Ms. Romans a raise for a total yearly salary of $22,000.08.

13. Over the past several years, Ms. Romans has suffered from multiple health problems, including COPD.

14. According to the CDC, persons, such as Ms. Romans, who have certain underlying medical conditions such as COPD, have an increased risk of severe illness from the virus that causes COVID-19. See, "People With Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (Last accessed on December 10, 2020).

15. To reduce against the risk of severe illness from COVID-19, the CDC recommends limited interactions with other people as much as possible. See, "How to Protect Yourself & Others," https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (Last accessed on December 10, 2020).

16. As noted in the previous online article, the CDC has made it both abundantly and crystal clear over the past several months that wearing masks over the mouth and nose helps prevent the spread of COVID-19:

    - Masks help prevent you from getting or spreading the virus.
    - You could spread COVID-19 to others even if you do not feel sick.
    - Everyone should wear a mask in public settings and when around people who don't live in your household, especially when other social distancing measures are difficult to maintain.

17. On March 19, 2020, Governor Justice confirmed our state's first case of COVID-19 in a televised address.

18. Effective as of 8:00 PM on March 24, 2020, Governor Justice ordered a general stay-at-home directive ("Order") to all individuals within the State of West Virginia. See, Executive Order No. 9-20, https://coronavirus-wvgovstatus-cdn.azureedge.net/STAY_AT_HOME_ORDER.pdf (Last accessed on December 10, 2020).

19. The stay-at-home Order temporarily required all "non-essential business and operations" to cease operations immediately.

20. On March 25, 2020, Ms. Romans' treating physician, Dr. Charles Clements, II, stated that "[d]ue to her multiple medical problems, [Ms. Romans] is at increased risk during the Corona Virus pandemic. I ask that she be allowed to work from home for the next thirty days. At that time[,] the situation can be reassessed."

21. The Defendants did not respond to Ms. Romans' request to work at home at any time over the next 7 months.

22. On March 29, 2020, the West Virginia Department of Health and Human Resources confirmed the state's first COVID-19 related death.

23. Over the next several weeks, West Virginia remained under the Order as COVID-19 rapidly spread across our state and the nation.

24. Acknowledging the CDC's and scientific community's clear instructions that mask wearing prevents the spread of the virus causing COVID-19, on July 7, 2020, Governor Jim Justice finally issued an executive order requiring all persons to wear a face covering when in confined, indoor spaces. See, Executive Order No. 50-20, https://governor.wv.gov/Documents/2020%20Executive%20Orders/EO%2050-20.pdf (Last accessed on December 10, 2020).

25. Despite the governor's executive order and the CDC's repeated admonitions on using masks to protect against COVID-19 infections, the Defendants only paid lip service to the order, and did not require the employees in Ms. Romans' office to wear masks despite their working together in a confined, indoor space.

26. Adding literal insult to the Defendants' failure to enforce wearing of facial coverings in the office, Ms. Romans' co-workers openly mocked her for wearing a mask in the office.

27. One of Ms. Romans' co-workers claimed Ms. Romans was "killing herself" by wearing a mask and refused to wear a mask, herself.

28. When Ms. Romans requested Defendant Thompson to ensure that the other employees in the office wore masks, he derided her in front of the other employees for asking him to enforce the same.

29. On July 28, 2020, Ms. Romans' treating physician completed his portion of Ms. Romans' application for FMLA leave.

30. Dr. Clements confirmed Ms. Romans' COPD diagnosis, stated that she had a serious health condition requiring planned medical treatment at least twice a year, and repeated that she needed to avoid exposure to COVID as he had indicated back in March.

31. Dr. Clements stated Ms. Romans would require FMLA leave from July 28, 2020 through October 28, 2020 because she was not able to perform her duties due to "[c]ontact with other staff (unmasked). . . ."

32. By letter dated July 31, 2020, Defendant Thompson approved Ms. Romans for unpaid leave from July 28, 2020 through October 28, 2020 "with you [sic] reporting back to work on October 29, 2020."

33. Before Ms. Romans took her FMLA leave, Defendants had a pattern and practice of communicating with Ms. Romans as it involved her reporting for work, and had always returned her calls involving any matters involving her work attendance.

34. Before taking her FMLA leave, Ms. Romans also had regularly communicated with Defendants concerning her work arrivals.

35. For example, if Ms. Romans did not report on time for work, an employee of the sheriff's office would call to check on her.

36. Likewise, Ms. Romans would contact the employees in the office to advise of an absence or if she were running late.

37. On October 26, 2020, seven months after Ms. Romans had first sought a reasonable accommodation in her job from Defendants, Defendant Thompson finally responded to Ms. Romans' March 25, 2020 request to work from home and denied it without providing any reason.

38. On October 27, 2020, the day before her expected return to work, Ms. Romans phoned the

sheriff's office, and spoke with her immediate supervisor, Ms. Laura Porter.

39. Ms. Romans asked to speak to Defendant Thompson, who allegedly was not available for her phone call.

40. Ms. Romans asked Ms. Porter if the employees were complying with our state's mask mandate in the office, and Ms. Porter told her no.

41. Ms. Romans then left a message for Defendant Thompson to call her back because she wanted to address his refusal to enforce the face covering order and protective measures designed to protect her and other employees from contracting COVID-19.

42. On October 29, 2020, while Ms. Romans awaited Defendant Thompson's return phone call, she learned she had a certified letter at the post office.

43. When Ms. Romans retrieved the letter, she saw it was from Defendant Thompson, and that he had terminated her that same day, October 29, 2020.

44. In terminating Ms. Romans, the Defendants made absolutely no reasonable attempt to communicate with Ms. Romans, or, as asserted below, attempt to determine a reasonable accommodation, one of which would have simply been to enforce the existing mask mandate the Defendants blatantly ignored.

45. Effective November 14, 2020, with COVID-19 cases continuing to surge, Governor Justice issued a mandatory face covering in all public buildings at all times. See, Executive Order No. 77-20, https://governor.wv.gov/Documents/2020%20Executive%20Orders/EO%2077-20%20Face%20Covering%20Amendment.pdf (Last Accessed December 10, 2020).

46. Over the past week, the number of COVID-19 deaths reported in the US was higher than the death toll for the attack on Pearl Harbor. See, Business Insider, "The number of COVID-19 deaths reported in the US nearly every day last week was higher than the death toll for

the attack on Pearl Harbor," December 7, 2020, https://www.businessinsider.com/recent-daily-us-coronavirus-death-tolls-similar-to-pearl-harbor-2020-12 (Last Accessed December 10, 2020).

47. Despite accounting for a fraction of the world's population, America leads the world with the most COVID-19 cases. See, WHO Coronavirus Disease (COVID-19) Dashboard, https://covid19.who.int/table, (Last accessed, December 10, 2020).

48. America's COVID-19 confirmed COVID-19 cases now top 15,000,000 (15 million) and nearly 300,000 of our citizens have died from COVID-19 related causes. See, CDC COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (Last accessed December 10, 2020).

49. Since the Defendants fired her after she took FMLA to protect against COVID-19, Ms. Romans remains unemployed.

50. As a result of Defendants' blatant disregard of her safety, Ms. Romans has also suffered emotional distress, loss of enjoyment of life, and humiliation.

**COUNT I: DISCRIMINATION/RETALIATION FOR MS. ROMANS EXERCISING RIGHTS AND ENGAGING IN CONDUCT PROTECTED UNDER THE FAMILY AND MEDICAL LEAVE ACT**

51. Plaintiff incorporates the previous paragraphs as if set forth herein.

52. Before requesting and/or requiring a leave of absence (FMLA leave), Ms. Romans had been employed by Defendants for longer than twelve (12) months and had worked at least 1250 hours of service for Defendants during the prior twelve-month period.

53. When Plaintiff notified Defendants of her serious health condition (COPD) and/or her need to take time off from work to care for and treat the same, she gave adequate and proper notice of her need to take leave under the FMLA.

54. When Plaintiff requested and/or required leave, she was qualified and eligible for a leave of absence under the FMLA, and, in fact, Defendants approved her FMLA leave.

55. In notifying Defendants of her serious health condition and her taking time to receive care for her serious health condition between July 28, 2020 and October 28, 2020, Plaintiff engaged in conduct protected under the FMLA that entitles her to all relief under the FMLA, including job protection.

56. Defendants took adverse action against Ms. Romans, including, but not limited to, failing to ensure that employees complied with our state's mask-wearing mandate and immediately terminating Ms. Romans after she had received FMLA leave.

57. Plaintiff's protected conduct under the FMLA was a motivating factor in Defendants' decision to take adverse action against Plaintiff, up to and including termination.

58. Defendants' termination of Plaintiff after she notified Defendants that she had a serious health condition and took time off work due to her health condition was reckless and in deliberate disregard of Plaintiff's rights under the FMLA, and in violation of the FMLA's anti-discrimination and retaliation provisions.

59. Defendants' conduct, up to and including its termination of Plaintiff, is and was in bad faith, malicious, reckless and purposefully indifferent to Plaintiff's rights under the FMLA, and she seeks recovery as set forth in the prayer for relief.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE WEST VIRGINIA HUMAN RIGHTS ACT**

60. Plaintiff incorporates the previous paragraphs as if set forth herein.

61. Plaintiff is a qualified person with a disability under the West Virginia Human Rights Act (W. Va. Code §5-11-9, et seq.).

62. Plaintiff has health conditions (COPD) that substantially limit certain major life activities

including, but not limited to, working.

63. Alternatively, Defendants and their agents regarded Plaintiff as having an impairment that substantially limits one or more of her major life activities.

64. At all times alleged, the Plaintiff is and was qualified for the original job she held with the Defendants because Plaintiff satisfies and satisfied the skill, experience, and other job-related requirements for the position she held, and she was and is able to perform the essential functions of her job, with or without reasonable accommodation.

65. Defendants took adverse action against Plaintiff when it 1) refused to accommodate her by simply requiring its employees to comply with the face covering mandate, 2) refused to communicate with Plaintiff concerning potential other accommodations for her COPD, and 3) terminating Plaintiff without making any reasonable efforts to accommodate her.

66. Plaintiff's status as a person with a disability was a motivating factor in Defendant's decision to take the above-referenced adverse actions against her.

67. Any reason alleged by Defendants for their above-referenced, adverse actions against Plaintiff, is pretext for the real reason, namely, the intentional discrimination by Defendants against the Plaintiff based on her status as a person with a disability and/or its perception of Plaintiff as a person with a disability.

68. As a direct and/or proximate result of the intentional discriminatory acts and practices of Defendants, the Plaintiff has suffered and continues to suffer injury including, but not limited to, past and future loss of income and other benefits of employment, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, and damage to her reputation, as well as other past and future pecuniary losses.

69. Defendants knew or reasonably should have known that their actions against Plaintiff were

false, wanton, willful, malicious, and intended to solely harm her and were indifferent to Plaintiff's rights under the West Virginia Human Rights Act. Wherefore, Plaintiff requests punitive damages and the relief as set forth below.

### COUNT III: *HARLESS* CLAIM BASED ON THE PUBLIC POLICIES OF FMLA

70. Plaintiff incorporates the previous paragraphs as if set forth herein.

71. Before her termination by Defendants, Ms. Romans had performed all conditions, covenants, promises, duties and responsibilities required of her and in accordance and conformity with Defendant's legitimate expectations.

72. In striving to comply with her duties as an employee and with the Family and Medical Leave Act, Plaintiff notified Defendants of her need for FMLA, and received approval for FMLA leave.

73. Plaintiff's discharge followed her protected activity (receipt of FMLA) within such a period of time (the day after her FMLA leave ended) that the Court can make an incredibly, strong inference of retaliatory motivation.

74. The Defendants' treatment and termination of Plaintiff is a retaliatory and wrongful discharge in violation of the public policies embodied in the FMLA. *Vandevander v. Verizon Wireless, LLC*, 149 F. Supp. 3d 724, 731 (S.D.W.Va. 2016)(Chambers, J.)(noting FMLA provides a substantial public policy sufficient to support a West Virginia common law claim for retaliatory discharge in violation of public policy); *Collins v. Defendants Home Ctrs., LLC*, 2017 U.S. Dist. LEXIS 201430 (S.D.W.Va. December 7, 2017)(Chambers, J.)(Following *Vandevander*).

75. As a direct and proximate result of Defendants' intentional, discriminatory, and retaliatory acts against her, Plaintiff has suffered and continues to suffer injury, including, but not

limited to, loss of past and future earnings and other benefits of employment, anguish, pain and suffering, humiliation, loss of enjoyment of life, costs associated with obtaining employment, embarrassment, damage to her reputation and other past and future pecuniary losses. Wherefore, Plaintiff seeks relief as set forth below.

76. Defendants and their agents knew or reasonably should have known that their actions taken against Plaintiff were false, wanton, willful, and malicious and designed and intended solely to harm Ms. Romans.

77. Defendants' actions are and were indifferent to Plaintiff's rights under the public policies embodied in FMLA. Wherefore, Plaintiff seeks punitive damages and relief as provided below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Patricia Romans requests judgment against the Defendants as follows:

a. On all Counts, actual damages including, but not limited to, damages for lost wages (back and front pay), lost compensation and benefits, and costs of treatment for emotional and/or physical harm suffered by Ms. Romans as a direct and/or proximate result of the above stated unlawful actions;

b. On Count I, liquidated damages and all amounts recoverable under the FMLA;

c. On Counts II and III, general and compensatory damages for annoyance, inconvenience, embarrassment anxiety, humiliation, and any other emotional harm suffered by Plaintiff as a direct and/or proximate result of Defendants' aforementioned actions;

d. Punitive damages against the individual Defendant, in his individual capacity only, sufficient to deter future improper and unlawful conduct and blatant disregard of mandates designed to protect West Virginians' health and safety;

e. Attorneys' fees and the costs of pursuing this action;

f. Prejudgment and post judgment interest on all amounts allowed by law;

g. Such further relief as is supported by the law; and

h. Any relief this Court deems fair and proper in the interests of justice.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES.**

PLAINTIFF, PATRICIA ROMANS
By Counsel,

s/Hoyt Glazer
Hoyt Glazer (WV Bar #6479)
Abraham J. Saad (WV Bar #10134)
Eric Anderson (WV Bar #11895)
GLAZER SAAD ANDERSON L.C.
320 Ninth Street, Suite B
Huntington, WV 25701
T. 304-522-4149
F. 800-879-7248
hoyt@gsalaw-wv.com
abe@gsalaw-wv.com
eric@gsalaw-wv.com