IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

PATRICIA ROMANS,

                Plaintiff,

v.                                              CIVIL ACTION NO.  3:20-0797

WAYNE COUNTY COMMISSION,
WAYNE COUNTY SHERIFF, RICHARD
THOMPSON, individually and in his official
capacity,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss by Defendant Wayne County Commission and Wayne County Sheriff Richard Thompson, individually and in his official capacity. ECF No. 9. Plaintiff Patricia Romans opposes the motion. For the reasons stated below, the motion **IS DENIED**.

**I.
FACTUAL ALLEGATIONS**

In her Complaint, Plaintiff alleges that, on January 15, 2019, she began working as a clerk who processed tax payments and performed other clerical duties for Defendant Wayne County Commission. At all relevant times, Defendant Richard Thompson (hereinafter Sheriff Thompson) was the county sheriff and Plaintiff's supervisor. On March 25, 2020, Plaintiff's treating physician requested Plaintiff be permitted to work from home for a period of thirty days because her medical conditions place her at increased risk during the COVID-19 pandemic. Plaintiff specifically points out that she suffers from chronic obstructive pulmonary disease

("COPD"), which is an established risk factor. Plaintiff alleges Defendants did not respond to her request to work from home for the next seven months.

On July 7 2020, West Virginia Governor Jim Justice issued Executive Order No. 50-20, which requires, in part, that individuals over the age of 9 wear face coverings in certain indoor settings. *Exec. Order No. 30-20,* https://governor.wv.gov/Documents/2020%20Executive%20Orders/EO%2050-20.pdf (Last accessed on August 30, 2021).[1] Plaintiff claims that, despite the Executive Order, Defendants did not require employees to wear masks where she worked, and her co-workers openly mocked her for wearing a mask. She further alleges that, when she asked Sheriff Thompson to enforce the mask mandate, he derided her in front of the other employees for making the request. On July 28, 2020, Plaintiff's treating physician documented her COPD diagnosis, her need to avoid exposure to COVID-19, and the necessity for her to be placed on leave through October 28, 2020 under the Family Medical Leave Act (FMLA) to avoid contact with other unmasked employees.

---

[1]Executive Order No. 50-20 provides, in part:

> All individuals age 9 and over within the State of West Virginia shall wear an adequate face covering when in confined, indoor spaces, other than when in one's residence or when actively engaged in the consumption of food and/or beverage, and when not able to adequately social distance from other individuals who do not reside in the same household.

*Id*. at 3. Defendants state there was no indoor public space mask mandate until November 14, 2020. *Exec. Order No.* 77-20, https://governor.wv.gov/Documents/2020%20Executive%20Orders/EO%2077-20%20Face%20Covering%20Amendment.pdf (Last accessed on August 30, 2021). For purposes of this motion, the Court need not resolve any disagreement between the parties as to when the mask mandate applied.

Plaintiff's request for unpaid FMLA was granted, with her scheduled to report back to work on October 29, 2020.

Seven months after Plaintiff asked to work from home, Sheriff Thompson finally responded to the request and denied the same on October 26, 2020. The next day, Plaintiff telephoned the sheriff's office and asked whether employees were complying with the mask mandate. Plaintiff states she was told no. Plaintiff asked to speak with Sheriff Thompson, but she was told he was unavailable so she left a message for him to call her. Plaintiff claims that, although Defendants had a pattern and practice of communicating with her, Sheriff Thompson did not return her call. Plaintiff states she did not return to work on October 29, when her leave expired, because she was waiting for Sheriff Thompson to call her. On that same day, she received a certified letter from Sheriff Thompson stating she was terminated.

Plaintiff then filed this action on various grounds. First, she claims Defendants' actions constituted discrimination and retaliation for her exercising her rights under the FMLA (Count I). Second, she asserts a claim for disability discrimination in violation of the West Virginia Human Rights Act (WVHRA) (Count II). Third, Plaintiff alleges Defendants violated public policy under the FMLA, which gives rise to a claim under *Harless v. First National Bank*, 246 S.E.2d 270 (W. Va. 1978). Defendants move to dismiss all these claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.
## STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion, courts must look for "plausibility" in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). This standard requires a

plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own

judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

### III.
### DISCUSSION

#### A.
#### Count 1 - FMLA

In their motion, Defendants first argue Plaintiff has failed to state a claim under the FMLA because she was granted FMLA and was fired for not returning to work when her leave expired. Thus, Defendants assert Plaintiff cannot maintain her claim that she was discriminated and retaliated against for exercising her rights under the FMLA as alleged in Count I.[2]

---

[2] 29 U.S.C.A. § 2615(a) of the FMLA provides:

**(a) Interference with rights**

**(1) Exercise of rights**

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

**(2) Discrimination**

The parties agree that in order for Plaintiff to maintain her claim she must make a prima facie showing that (1) "she engaged in a protected activity[,]" (2) Defendants took an adverse action against her, and (3) the adverse action was casually connected to her protected activity. *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 429 (4th Cir. 2015) (internal quotation marks and citation omitted). If Plaintiff establishes a prima facie case, the burden then shifts to Defendants to offer a non-retaliatory reason for the adverse action. *Id*. (citing *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717, 719 (4th Cir. 2013), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).[3] If Defendants show such a reason, Plaintiff then must show Defendants' proffered reason is mere pretext. As to this point, Defendants argue that Plaintiff was terminated because she failed to return to work, not because she requested and took FMLA. Therefore, Defendants insist Count I must be dismissed. The Court finds, however, that Plaintiff's allegations are sufficient for her claim to proceed.

Specifically, with respect to alleging a prima facie case, Plaintiff first has alleged she engaged in a protected activity, that is, she notified Defendants that she suffered a serious health condition and requested and received leave under the FMLA. Second, the parties agree

---

> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C.A. § 2615(a).

[3] A plaintiff also can maintain a claim under the FMLA by producing "direct and indirect evidence of retaliatory animus." However, the parties both rely upon the *McDonnell Douglas* approach in this case. *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020), cert. denied, 209 L. Ed. 2d 732 (May 3, 2021).

Plaintiff suffered an adverse action by virtue of her termination.[4] Third, Plaintiff alleges Defendants' decision to terminate her was motivated by the fact she engaged in protected activity under the FMLA, which is evidenced by the fact Sheriff Thompson refused to speak with her, refused to enforce the mask mandate or allow her a reasonable accommodation, and fired her immediately after her FMLA expired. Although Defendants argue she was fired for a legitimate, non-discriminatory reason because she did not return to work, Plaintiff insists Defendants' proffered reason is mere pretext and the temporal proximity of her termination to the expiration of her leave is evidence of retaliation. As the Court must consider the facts in the light most favorable to Plaintiff for purposes of a motion to dismiss, the Court finds Plaintiff's allegations are sufficient to state a claim of retaliation under the FMLA and **DENIES** Defendants' motion with respect to this claim.

Defendants further argue that Plaintiff was never entitled to leave under the FMLA as a matter of law under guidance set forth by the Department of Labor that an employee cannot stay home under the Act to avoid exposure to COVID-19. Instead, the FMLA is designed to protect eligible employees "who are incapacitated by a serious health condition," and just being afraid of being exposed to COVID-19 is not enough under the FMLA. *Covid-19 and the Family and Medical Leave Act Questions and Answers,* Dep't of Labor,

---

[4] Plaintiff also claims that Defendants' failure to enforce the West Virginia's mask mandate was an adverse action against her. As previously mentioned, Defendants insist there was not a "mandate" until November 2020, which was after Plaintiff's termination. As Plaintiff has alleged her termination itself was an adverse action, the Court finds she has sufficiently alleged an adverse action under the second prong, and the Court need not parse through the nuances of her mask argument at this time.

https://www.dol.gov/agencies/whd/fmla/pandemic#4 (last visited on August 30, 2021). [5] In Response, Plaintiff argues that Defendants should be equitably estopped from making any argument that she was not entitled to leave under the Act because they granted it to her.

Upon consideration, the Court declines to address whether equitable estoppel should be applied at this point in the proceedings. Before the issue of equitable estoppel is reached, it first must be determined if Plaintiff *detrimentally* relied upon Defendants' representation that she was entitled to leave under the Act. Clearly, Plaintiff was told she was entitled to leave when she took it. However, it is unknown to the Court whether Plaintiff would have reported to work even if Defendants had told her she was not eligible for FMLA. "Where an employee fails to adequately show that . . . she would have structured her leave differently had her employer properly informed her of her FMLA eligibility courts have concluded that the employee cannot show detrimental reliance and therefore cannot prevail on an estoppel theory." *Adams v. Buckeye Fire Equip. Co.*, No. 3:19-CV-422-MOC-DSC, 2021 WL 1063796, at *4 (W.D.N.C. Mar. 18, 2021) (internal quotation marks and citations omitted). In other words, if Plaintiff was unwilling to report to work even if she knew she was not entitled to FMLA

---

[5]In part, the Department of Labor's guidance provides:

> **Can an employee stay home under FMLA leave to avoid getting COVID-19?**
>
> No. The FMLA protects eligible employees who are incapacitated by a serious health condition, as may be the case with COVID-19 in some instances, or who are needed to care for covered family members who are incapacitated by a serious health condition. Leave taken by an employee solely for the purpose of avoiding exposure to COVID-19 is not protected under the FMLA.

*Id.*, in part.

coverage, she did not detrimentally rely upon Defendants' representation that she was entitled to leave under the Act and cannot invoke equitable estoppel.[6]

## B.
## Count II – WVHRA

Next, Defendants argue Plaintiff has failed to state a claim for disability discrimination under the West Virginia Human Rights Act (WVHRA), West Virginia Code § 5-11-1 *et seq.* The WVHRA makes it unlawful for an employer to discriminate against an individual based on the individual's disability with respect to the tenure, terms, conditions, or privilege of employment, provided the individual is able and competent to perform the services required. *See* W. Va. Code. §§ 5-11-3(h),[7] 5-11-9(1).[8] As with Plaintiff's claim under the FLMA, Plaintiff's claim under the WVHRA is subject to the burden-shifting paradigm pronounced in *McDonnell Douglas*, that is, Plaintiff must establish a prima facie case, Defendants then may offer a legitimate, nondiscriminatory reason for their actions, and then the burden shifts back to Plaintiff to prove the proffered reason is mere pretext. *See Skaggs v. Elk Run Coal Co.,* 479

---

[6]The Court further recognizes that "'[t]he Fourth Circuit has not yet applied equitable estoppel in the context of FMLA eligibility, but several other circuits and at least one district court within the Fourth Circuit have done so.'" *Yaskowsky v. Phantom Eagle, LLC*, No. 4:19CV9, 2020 WL 809378, at *9 (E.D. Va. Feb. 18, 2020) (quoting *Schmidt v. Town of Cheverly, Md.*, GJH-13-3282, 2014 WL 4799039, at *6 (D. Md. Sept. 25, 2014) ("citing cases from the Second, Third, Fifth, and Sixth Circuits and deeming it proper to reach the merits of an FMLA equitable estoppel claim"), and citing *Blankenship v. Buchanan Gen. Hosp.*, 999 F. Supp. 832, 838 (W.D. Va. 1998) ("applying equitable estoppel in the FMLA context")). At this time, this Court simply finds any estoppel argument premature.

[7]Subsection 3(h) sets forth the definitions of "discriminate" and "discrimination" under the WVHRA, which provides, in part, "to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . disability[.]" W. Va. Code 5-11-3(h).

[8]Subsection 9(1) states, in part: "It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, . . . (1) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is . . . disabled[.]" W. Va. Code 5-11-9(1)

S.E.2d 561, 581-82 (W. Va. 1996) (outlining framework). To establish a claim of disability discrimination under the WVHRA, a "plaintiff must show that [s]he is a disabled person within the meaning of the law, that [s]he is qualified to perform the essential functions of the job (either with or without reasonable accommodation), and that [s]he has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises." *Id*. at 582 n.22.

Applying this standard to the allegations in the present case, the Court finds Plaintiff has adequately alleged a prima facie case of disability discrimination. First, Plaintiff asserts her COPD is a health condition "that substantially limit[s] certain major life activities" or, in the alternative, Defendants regarded her as having such an impairment. *Compl.* at ¶¶62, 63. Second, Plaintiff maintains that she was qualified for her position and that "she was and is able to perform the essential functions of her job, with or without reasonable accommodation." *Id*. at ¶64, in part. Third, Plaintiff was terminated and her disability (or Defendants' perception of her disability) was a motivating factor in the termination. *Id*. at ¶¶66, 67. Plaintiff further claims Defendants took an adverse action against her by "1) refus[ing] to accommodate her by simply requiring its employees to comply with the face covering mandate, 2) refus[ing]to communicate with Plaintiff concerning potential other accommodations for her COPD, and 3) terminating Plaintiff without making any reasonable efforts to accommodate her." *Id*. at ¶65. Plaintiff further maintains that whether enforcing mask-wearing was a reasonable accommodation is not determinative of whether she has properly alleged a claim. Taking the above allegations in the light most favorable to Plaintiffs, the Court agrees and finds she has adequately stated a claim

under the WVHRA. Thus, the Court **DENIES** Defendants' motion to dismiss Plaintiff's WVHRA claim.

### C.
### Count III – *Harless*

Lastly, Defendants argue Plaintiff has failed to allege a proper claim under *Harless v. First National Bank,* 246 S.E.2d 270 (W. Va. 1978). In *Harless*, the West Virginia Supreme Court carved out an exception to the rule that an employer may terminate an at-will employee by holding, "where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee" notwithstanding the general at-will termination rule. Syl., *Harless*. Thus, "a cause of action for wrongful discharge exists when an aggrieved employee can demonstrate that his/her employer acted contrary to substantial public policy in effectuating the termination." *Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 718 (W. Va. 2001).

Defendants argue, however, that Plaintiff cannot maintain a claim under *Harless* for violations of policies under either the FMLA or WVHRA for the same alleged wrongdoing. Although Defendants are correct that federal courts in West Virginia have repeatedly held that a plaintiff cannot maintain "both a *Harless*-based common law action and a WVHRA claim based on the same conduct[,]" *Adkins v. Cello P'ship, Inc.*, Civ. Act. No. 3:17-2772, 2017 WL 2961377, at *3 (S.D. W. Va. July 11, 2017),[9] Plaintiff does not rely upon violations of public policies under the WVHRA in Count III of her Complaint. Instead, Plaintiff's *Harless* claim is premised on violations of public policies under the FMLA. *See Compl. III* ("*Harless* Claim Based on the Public Policies of FMLA"). With respect to a *Harless* related policies under the

---

[9]Citations omitted.

FMLA, this Court recognized in *Vandevander v. Verizon Wireless, LLC*, 149 F. Supp.3d 724 (S.D. W. Va. 2016), that the FMLA does not preempt state law claims and "[n]o cases in West Virginia ha[ve] established that a plaintiff could not maintain a FMLA claim and a common law retaliatory discharge claim, so this Court permitted both claims . . . to advance." *Adkins*, 2017 WL 2961377, at *3 (citing *Vandevander,* 149 F. Supp.3d at 728-29)). Therefore, the Court permitted both claims in *Vandevander* to proceed. Likewise, the Court in this case finds Defendants' argument that Plaintiff cannot proceed under both the FMLA and *Harless* unavailing. Thus, the Court **DENIES** Defendants' motion to dismiss Count III.

### III.
### CONCLUSION

Accordingly, having found all three of Plaintiff's claims sufficiently pled, the Court **DENIES** Defendants' Motion to Dismiss. ECF No. 9.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: September 1, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE